**IN THE UNITED STATES DISTRICT COURT**
**FOR THE WESTERN DISTRICT OF PENNSYLVANIA**
**PITTSBURGH DIVISION**

| | | |
|---|---|---|
| **ZACHERY BITZ, SHEEN CLINE, JESSE RIPPETOE, JONAH FAULK, RYAN SNYDER, STEPHEN NESTOR, DILLON DAUGHERTY, DANIEL FAULK, COLTON WILLIAMS, ROGER DOTSON JR., AND DARREN MONN, individually and on behalf of similarly situated individuals** | § | **CIVIL ACTION NO.** |
| **Plaintiffs** | § | |
| **v.** | § | **CLASS ACTION COMPLAINT** |
| **SUN ENERGY SERVICES LLC d/b/a DEEP WELL SERVICES** | § | |
| **Defendant** | § | |

**<u>PLAINTIFFS' ORIGINAL COMPLAINT</u>**

Plaintiffs Zachery Bitz, Sheen Cline, Jesse Rippetoe, Ryan Snyder, Dillon Daugherty, Jonah Faulk, Stephen Nestor, Daniel Faulk, Colton Williams, Roger Dotson Jr., and Darren Monn (collectively referred to as "Plaintiffs"), by and through their attorney, bring this action against Defendant Sun Energy Services LLC d/b/a Deep Well Services ("Deep Well" or "Defendant") seeking unpaid wages, including overtime wages, and all other available relief under the Fair Labor Standards Act, 29 U.S.C. § 201, *et seq*. ("FLSA"), the New Mexico Minimum Wage Act, N.M. Stat. Ann. § 50-4-19, *et seq*. ("NMMWA"), the Colorado Wage Claim Act, § 8-4-101, *et seq.* and the Colorado Minimum Wage Act, C.R.S. §8-6-101, *et seq.*, as implemented by the Colorado Minimum Wage Order (the "Minimum Wage Orders") and then the Colorado Overtime and Minimum Pay Standards Orders ("COMPS") (collectively, "CWCA"), the Ohio Minimum Fair Wage Standards Act ("OMFWSA"), O.R.C. 4111.01, *et seq*., O.R.C. § 4113.15 (Ohio's "Prompt

Pay Act"), and O.R.C. § 2307.60, the Pennsylvania Minimum Wage Act ("PMWA"), 43 P.S. § 333.100, *et seq,* the West Virginia Minimum Wage and Maximum Hours Law; W. Va. Code §§ 21-5c-1, *et seq.*, the West Virginia Payment and Collection Act, W. Va. C.S.R. 42-5-1, *et seq.*, and § 21-3-10A (collectively the "West Virginia Wage Acts").

Based on personal knowledge of their own conduct and upon information and belief as to the conduct and acts of others, Plaintiffs allege as follows:

## I. PARTIES AND JURISDICTION

### A. Plaintiffs

1. Plaintiff Zachery Bitz ("Bitz") is an adult resident of West Virginia.

2. At all relevant times, Defendant employed Plaintiff Bitz as an hourly non-exempt Roughneck.

3. Plaintiff Sheen Cline ("Cline") is an adult resident of Pennsylvania.

4. At all relevant times, Defendant employed Plaintiff Cline as an hourly non-exempt Leadhand.

5. Plaintiff Jesse Rippetoe ("Rippetoe") is an adult resident of Oklahoma.

6. Defendant employed Plaintiff Rippetoe first as an hourly non-exempt Roughneck and then as an hourly non-exempt Leadhand.

7. Plaintiff Ryan Snyder ("Snyder") is an adult resident of Pennsylvania.

8. Defendant employed Plaintiff Snyder first as an hourly non-exempt Leadhand and then as an hourly non-exempt Operator.

9. Plaintiff Dillon Daugherty ("Daugherty") is an adult resident of Ohio.

10. Defendant employed Plaintiff Daugherty first as an hourly non-exempt Roughneck and then as an hourly non-exempt Leadhand.

11. Plaintiff Jonah Faulk ("Jonah Faulk") is an adult resident of Pennsylvania.

12. Defendant employed Plaintiff Jonah Faulk first as an hourly non-exempt Roughneck, then as an hourly non-exempt Leadhand, and then as an hourly non-exempt Operator.

13. Plaintiff Stephen Nestor ("Nestor") is an adult resident of Pennsylvania.

14. Defendant employed Plaintiff Nestor first as an hourly non-exempt Greenhat, then an hourly non-exempt Roughneck, then as an hourly non-exempt Leadhand, and then as an hourly non-exempt Operator.

15. Plaintiff Daniel Faulk ("Daniel Faulk") is an adult resident of Pennsylvania.

16. Defendant employed Plaintiff Daniel Faulk first as an hourly non-exempt Greenhat, then an hourly non-exempt Roughneck, and then as an hourly non-exempt Leadhand.

17. Plaintiff Colton Williams ("Williams") is an adult resident of Pennsylvania.

18. Defendant employed Plaintiff Williams as a Derrickman.

19. Plaintiff Roger Dotson Jr. ("Dotson") is an adult resident of Ohio.

20. Defendant employed Plaintiff Dotson as a Roughneck and a Leadhand.

21. Plaintiff Darren Monn ("Monn") is an adult resident of Pennsylvania.

22. Defendant employed Plaintiff Monn as a Roughneck and Leadhand.

23. Plaintiffs regularly worked more than 40 hours per workweek.

24. Plaintiffs are covered within the meaning of the FLSA.

**B. <u>Defendant</u>**

25. Defendant Sun Energy Services LLC d/b/a Deep Well Services ("Deep Well") is a Delaware Company doing business in multiple states. Upon information and belief, its principal place of business is located at 719 W New Castle St., Zelienople, PA 16063. Defendant may be served through their registered agent, Corporation Service Company d/b/a CSC-Lawyers

Incorporating Service Company at 211 E. 7th St., Suite 620 Austin, TX 78701, or wherever they may be found.

26. At all relevant times, Defendant was an "employer" within the meaning of the FLSA, 29 U.S.C. § 203(d); an "enterprise" within the meaning of the FLSA, 29 U.S.C. § 203(r); and an "enterprise engaged in commerce or in the production of goods for commerce" within the meaning of the FLSA, 29 U.S.C. § 203(s)(1).

27. At all relevant times, Plaintiffs were Defendant's "employees" within the meaning of the FLSA, 29 U.S.C. § 203(e).

28. Defendant applies the same employment policies, practices, and procedures to all Plaintiffs.

## II. JURISDICTION AND VENUE

29. This Court has subject matter jurisdiction over the claims in this complaint pursuant to 28 U.S.C. § 1332(d) and because Plaintiffs bring this action on behalf of themselves and all other similarly situated individuals pursuant to 29 U.S.C. §216(b).

30. This Court has jurisdiction over the FLSA claims pursuant to 29 U.S.C. § 216(b) in that the Plaintiffs may bring this action in any appropriate United States District Court.

31. The Court has supplemental jurisdiction over the state law claims pursuant to 28 U.S.C. § 1367, as these claims are so related to the FLSA claims they form part of the same case or controversy.

32. Venue is proper for this Court pursuant to 28 U.S.C. § 1391 since acts and omissions giving rise to this lawsuit have taken place in this division in the Western District of Pennsylvania. Specifically, Defendant conducts substantial business, promulgated, coordinated, and administers its pay practices from their headquarters in this jurisdiction.

33. Defendant is subject to personal jurisdiction in Pennsylvania.

34. At all times material to this Complaint, Defendant had employees who have regularly sold, handled, or otherwise worked on goods and/or materials that had been moved in or produced for commerce.

35. Defendant's gross annual sales volume was in excess of $500,000.00 per annum at all times material hereto.

36. At all times material to this Complaint, Defendant was an enterprise engaged in interstate commerce or in the production of goods for commerce as defined by the FLSA, 29 U.S.C. § 203(s).

37. This case raises a federal question under 29 U.S.C. § 216(b), giving this Court original subject matter jurisdiction pursuant to 28 U.S.C. § 1331.

38. Plaintiffs' state law claims are not novel or complex. 28 U.S.C. § 1367(c)(1).

39. Plaintiffs' state law claims do not predominate over their federal question claims. 28 U.S.C. § 1367(c)(2).

## III. APPLICABLE STATE LAW

### A. Colorado

40. The "Colorado Wage Laws" refer to the Colorado Wage Claim Act, C.R.S. § 8-4-101, *et seq.*, and the Colorado Minimum Wage Act, C.R.S. § 8-6-101, *et seq.*, as implemented by the Colorado Overtime and Minimum Pay Standards Order ("COMPS Order"), 7 C.C.R. 1103-1.

### B. New Mexico

41. The "New Mexico Wage Law" refers to the New Mexico Minimum Wage Act ("NMMWA"), NMSA § 50-4-19, *et seq.*

### C. Ohio

42. The "Ohio Wage Laws" refer to the Ohio Minimum Fair Wage Standards Act, Ohio Rev. Code § 4111.01, *et seq.*, including its overtime and wage-payment provisions.

**D. Pennsylvania**

43. The "Pennsylvania Wage Laws" refer to the Pennsylvania Minimum Wage Act ("PMWA"), 43 P.S. § 333.100, *et seq*.

**E. West Virginia**

44. The "West Virginia Wage Laws" refer to the West Virginia Minimum Wage and Maximum Hours Standards Act, W. Va. Code §§ 21-5C-1, et seq., ("WMWA") and the West Virginia Wage Payment and Collection Act, W. Va. Code §§ 21-5-1, *et seq*. ("WVWPCA").

45. The New Mexico Wage Law, Colorado Wage Laws, Ohio Wage Laws, Pennsylvania Wage Laws, and West Virginia Wage Laws are collectively referred to herein as the "State Wage Claims."

## IV. FACTUAL ALLEGATIONS

46. Defendant is a hydraulic completion and workover company that provides high-pressure hydraulic completion services to customers throughout the United States.

47. At all relevant times, Defendant has been an employer engaged in interstate commerce and/or the production of goods for commerce, within the meaning of the Fair Labor Standards Act ("FLSA").

48. Defendant administered payroll, payroll policies, and human resources functions from its Pennsylvania office located at 719 West New Castle Street Zelienople, PA 16063.

49. Defendant's Director of Finance and payroll personnel located in Pennsylvania controlled Defendant's payroll systems and communicated payroll-related policies to non-exempt Field Service Employees nationwide.

50. Defendant's employees in the Pennsylvania office controlled payroll and human resources functions and regularly communicated with Plaintiffs regarding pay, travel, and work-related matters.

51. At all relevant times, Defendant employed Plaintiffs Zachery Bitz, Sheen Cline, Jesse Rippetoe, Ryan Snyder, Dillon Daugherty, Jonah Faulk, Stephen Nestor, Daniel Faulk, Colton Williams, Roger Dotson Jr., and Darren Monn as non-exempt, hourly employees, including Greenhats, Roughnecks, Leadhands, Operators, and Derrickmen ("Field Service Employees").

52. At all relevant times Defendant paid Plaintiffs on an hourly basis.

53. At all relevant times Defendant paid all Field Service Employees on an hourly basis.

54. At all relevant times, Plaintiffs performed manual labor in connection with Defendant's onsite hydraulic completion operations.

55. At all relevant times, Plaintiffs typically worked at least forty (40) hours per workweek.

56. During the relevant period, Defendant required Field Service Employees in the Snub and Rig department, including Plaintiffs, to operate company-issued light-duty pickup trucks at certain times they were scheduled to work.

57. These vehicles were light-duty trucks, such as Ram 1500-type pickup trucks.

58. Defendant did not require Plaintiffs to drive vehicles with a gross vehicle weight rating ("GVWR") of 10,000 pounds or more across state lines during the relevant period.

59. Plaintiffs were not expected, as part of their regular job duties, to operate vehicles with a GVWR exceeding 10,000 pounds in interstate commerce.

60. In addition, some Plaintiffs did not operate motor vehicles in interstate commerce

during their employment with Defendant.

**Travel to Remote Job Sites**

61. At all relevant times, Defendant regularly required Plaintiffs to travel to remote job sites to perform hydraulic completion work for Defendant's customers.

62. These job sites were frequently located hundreds of miles away from Plaintiffs' home communities and often required travel across state lines.

63. Defendant sent Plaintiffs on out-of-town work assignments that required overnight stays and were scheduled in multi-week rotations known as "Hitches," which generally lasted approximately twenty-eight (28) days.

64. Plaintiffs traveled to out-of-town job assignments either by personal vehicle or by airplane.

65. When Plaintiffs traveled by airplane, Defendant booked and controlled Plaintiffs' flights to and from out-of-town assignments.

66. Plaintiffs routinely traveled to job sites located in multiple states, including Pennsylvania, New Mexico, Texas, Ohio, Oklahoma, Louisiana, Colorado, and West Virginia, as part of their regular work schedules.

67. Travel to and from out-of-town job assignments frequently occurred during Plaintiffs' normal working hours and often required a full day of travel in each direction.

68. Defendant expected Plaintiffs to report to remote job sites as scheduled, regardless of the distance from their home communities.

69. When assigned to out-of-town work, Plaintiffs typically stayed overnight near the job site in man camps or hotels arranged and paid for by Defendant during scheduled workdays.

70. Plaintiffs spent substantial time before and after their work shifts driving or flying

hundreds of miles to and from the job sites. This travel cut across Plaintiffs' normal working hours during both regular working days and non-working days.

71. Based on reasonable belief, Defendant's travel-time pay practices described herein have been in place for at least the past three years and throughout Plaintiffs' employment.

**Examples of Required Travel**

72. For example, on December 29, 2023, Defendant sent Plaintiff Bitz on an out-of-town business trip from his hometown of Fairmont, West Virginia to Odessa, Texas as part of multiple-day business trips that required at least one overnight stay. The flight between locations took approximately 5 hours. All hours Plaintiff Bitz spent traveling were not accounted for and were never paid to him. The entire 5-hour flight cut across Plaintiff Bitz's normal working hours and was not counted as compensable time under the FLSA.


Passenger
BITZ / ZACHERY BRIAN

Rate Your Experience

**Please review your itinerary upon receipt. World Travel Inc. will not be responsible for any discrepancies on this itinerary if not notified within 24 hours of when reservation was made.**

Please check and observe all entry and health requirements applicable to your journey. Travel requirements are subject to change without notice. For more information visit WorldAlert360.

Calm your travel anxieties and gain peace of mind with the ultimate travel companion - WorldMobile! Download now to carry World Travel Inc. with you wherever you go.

Download on the App Store | GET IT ON Google Play

**Friday 29 December 2023**

**American Airlines 3638**

MAF → DFW

Odessa Regional, Midland, TX, United States → Dallas/Ft Worth International, Dallas/Fort Worth, TX, United States

DEPARTURE 12:26 PM | ARRIVAL 1:45 PM

Operated By: ENVOY AIR AS AMERICAN EAGLE
Status: Confirmed
Confirmation: ENLEIX
Directions - MAF

Class: Economy Estimated Time: 1 hour(s) and 19 minute(s) Non-stop Distance: 313
CO2 Emissions: 177 kg/0.17 metric tons Equipment: Embraer 175
Seat: Assigned at Check-in

Baggage

**American Airlines 1868**

DFW → PIT

Dallas/Ft Worth International, Dallas/Fort Worth, TX, United States → Pittsburgh International Airport, Pittsburgh, PA, United States

DEPARTURE 2:44 PM | ARRIVAL 6:18 PM

Status: Confirmed
Confirmation: ENLEIX
Directions - DFW

Class: Economy Estimated Time: 2 hour(s) and 34 minute(s) Non-stop Distance: 1064
CO2 Emissions: 248 kg/0.24 metric tons Meal Info: Refreshment

73. Furthermore, Plaintiff Bitz would drive approximately 1.5 hours from his

hometown to the Pittsburgh airport. These hours Plaintiff Bitz spent traveling were also not accounted for and were never paid to him.

74. The same is also true for Plaintiff Rippetoe. For example, shortly before March 2024, Defendant sent Plaintiff Rippetoe on an out-of-town business trip from his hometown in McAlester, Oklahoma to Jewett, Texas as part of multiple-day business trips that required at least one overnight stay. The drive between locations was approximately 463 miles away and took approximately 6.5 hours. All hours Plaintiff Rippetoe spent traveling were not accounted for and were never paid to him. The entire 6.5-hour drive cut across the FLSA Collective's normal working hours and was not counted as compensable time under the FLSA.

75. Instead, Defendant only reimbursed Plaintiff Rippetoe $310.21, as shown in his Travel Log.



DEEP WELL SERVICES

| PER DIEM-TRAVEL POLICY | REVIEWED BY: Brian le Vann | EFFECTIVE DATE: 07/2022 | DOCUMENT #: DWSHR.002-1 |
|---|---|---|---|
| DEPARTMENT APPROVAL: Dave Mulvihill | | SUPERCEDES DATE: 1/2022 | REVISION #: G |

EMPLOYEE NAME: Jesse Rippetoe

| Travel Date | Starting Address | Destination Address | Total Mileage | Total Due |
|---|---|---|---|---|
| | | | 62.5 cents per mile | |
| 4/2/24 | 306 NE 12th St | 2657 State highway 113 | 463 | 310.21 |
| Snub 22 | Bldg A Big Spring, TX | McAlester, OK 74501 | | |
| | 79720 | | | |
| | | | | |
| | | | | |
| | | | | |
| | | | | |
| | | | Total Mileage Reimbursement | 463 |
| | | | Tolls (with receipt only)/Misc. | |
| | | | Total Due Employee | 310.21 |

SEND COMPLETED FORM TO: crewing@deepwellservices.com.

76. Similarly, Defendant sent Plaintiff Daugherty on multiple out-of-town business trips that required at least one overnight stay. The drives between Plaintiff Daugherty's hometown in Canton, Ohio to Pittsburgh, PA were often 63 miles and took approximately 1 hour each way. All hours Plaintiff Daugherty spent traveling were not accounted for and were never paid to him.

The hour-long drives cut across the FLSA Collective's normal working hours and were not counted as compensable time under the FLSA.

77. For example, on December 26, 2022, Defendant sent Plaintiff Daugherty on an out-of-town business trip from Carrollton, Ohio to Pittsburgh, Pennsylvania as part of multiple-day business trips that required at least one overnight stay. The drive was approximately 63 miles away and took approximately 1 hour. All hours Plaintiff Daugherty spent traveling were not accounted for and were never paid to him. The entire hour-long drive cut across the company's cut across the FLSA Collective's normal working hours and was not counted as compensable time under the FLSA.

78. Instead, Defendant only reimbursed Plaintiff Daugherty $41.26, as shown in his Travel Log.

| DEEP WELL SERVICES | PER DIEM-TRAVEL POLICY | REVIEWED BY: Brian le Vann | EFFECTIVE DATE: 1/2023 | DOCUMENT #: DWSHR.002-1 |
|---|---|---|---|---|
| | DEPARTMENT APPROVAL: Dave Mulvihill | | SUPERCEDES DATE: 7/2022 | REVISION #: H |

| Travel Date | HCU/Rig # | Starting Address | Destination Address | Total Miles | Total Due |
|---|---|---|---|---|---|
| EMPLOYEE NAME: Dillon Daugherty | | | | Miles x .655 = Total | |
| 12.23.22 | HCU 15 | 1000 Airport Blvd, Pittsburgh, PA 15231 | 4360 arrow rd nw carrollton oh. 44615 | 63 miles | 41.26 |
| 12.26.22 | HCU 15 | 4360 arrow road nw carrollton oh.44615 | 1000 airport Blvd Pittsburgh.pa 15231 | 63 miles | 41.26 |
| 12.29.22 | HCU 15 | 1000 airport Blvd Pittsburgh.Pa 15231 | 4360 arrow rd nw carrollton oh.44615 | 63 miles | 41.26 |
| 01.11.23 | HCU 15 | 4360 arrow rd nw carrollton oh.44615 | 1000 airport blvd Pittsburgh pa 15231 | 63 miles | 41.26 |
| 02.09.23 | HCU 15 | 1000 airport blvd Pittsburgh Pa 15231 | 4360 arrow rd nw carrollton oh.44615 | 63 miles | 41.26 |
| | | | | | |
| | | | | | |
| | | | | | |
| | | | | | |
| | | | | Total Mileage Reimbursement | 315 miles |
| | | | | Tolls (with receipt only)/Misc. | |
| | | | | Total Due Employee | 206.32 |

**SEND COMPLETED FORM TO:** crewing@deepwellservices.com.

- Travel 50 miles or less one way is not reimbursable. Form must be completed ***after*** travel has taken place and submitted for reimbursement *within approx. 1 month of travel.* All mileage information is verified, the most direct route is expected.
- Personal vehicles are not permitted on the jobsite per customer and company policy.
- If it is determined that the cost of a flight is considerably more economical than the cost of mileage reimbursement, a flat rate reimbursement amount will apply. This must be approved in advance.
- If an employee must return home mid-hitch for personal reasons, the employee will be responsible for the travel, up to $450 each way.
- **Mileage is reimbursed at 65.5 cents per mile** unless flat rate applies.

79. Based on reasonable belief, Defendant sent State Class Members who lived in various states such as Ohio and West Virginia on out-of-town work trips such as job sites in Pennsylvania without counting the travel time as compensable time even though they cut across

FLSA Collective normal working hours and required overnight stays.

80. This lawsuit addresses the weeks when the Plaintiffs worked hours at the job site added to the uncompensated out-of-town travel time resulted in working hours over 40 hours that work week and unpaid overtime.

**Hitch Structure and Repeated Long-Distance Travel**

81. At the conclusion of each Hitch, Plaintiffs typically spent a full day traveling back to their home communities.

82. Plaintiffs then received scheduled time off before traveling again to the next out-of-town assignment.

83. This pattern of extended Hitches followed by long-distance travel to and from remote job sites was Plaintiffs' regular and recurring work schedule throughout their employment.

84. For example, Plaintiff Bitz would travel from West Virginia to various states including New Mexico, Texas, Pennsylvania, and Ohio for a weeks-long Hitch. After Plaintiff Bitz's Hitch was over, he then traveled back to his hometown in West Virginia. This was his regular work schedule during his entire tenure.

85. Plaintiff Rippetoe would travel from Oklahoma to various states including Pennsylvania, New Mexico, Texas, and West Virginia for a weeks-long Hitch. After Plaintiff Rippetoe's Hitch was over, he then traveled back to his hometown in Oklahoma. This was his regular work schedule during his entire tenure.

86. Plaintiff Snyder traveled from Pennsylvania to various states including West Virginia, Ohio, New Mexico, and Texas for a weeks-long Hitch. After Plaintiff Snyder's Hitch was over, he then traveled back to his hometown in Pennsylvania. This was his regular work schedule during his entire tenure.

87. Plaintiff Daugherty traveled from Ohio to various states including Texas, Pennsylvania, West Virginia, Louisiana, and Colorado for a weeks-long Hitch. After Plaintiff Daugherty's Hitch was over, he then traveled back to his hometown in Ohio. This was his regular work schedule during his entire tenure.

88. Plaintiff Jonah Faulk traveled from Pennsylvania to various states including Pennsylvania, Ohio, West Virginia, and Texas for a multiple weeks-long Hitch. After Plaintiff Jonah Faulk's Hitch was over, he then traveled back to his hometown in Pennsylvania. This was his regular work schedule during his entire tenure.

89. Plaintiff Nestor traveled from Pennsylvania to various states including Pennsylvania, Ohio, West Virginia, Texas, New Mexico, Oklahoma, and Louisiana for a weeks-long Hitch. After Plaintiff Nestor's Hitch was over, he then traveled back to his hometown in Pennsylvania. This was his regular work schedule during his entire tenure.

90. Plaintiff Daniel Faulk traveled from Pennsylvania to various states including Pennsylvania, West Virginia, and Ohio for a weeks-long Hitch. After Plaintiff Daniel Faulk's Hitch was over, he then traveled back to his hometown in Pennsylvania. This was his regular work schedule during his entire tenure.

91. Plaintiff Williams traveled from Pennsylvania to various states including Ohio, West Virginia, and Pennsylvania for a weeks-long Hitch. After Plaintiff Williams's Hitch was over, he then traveled back to his hometown in Pennsylvania. This was his regular work schedule during his entire tenure.

92. Plaintiff Dotson traveled from Ohio to various states including Texas, New Mexico, and Pennsylvania for a weeks-long Hitch. After Plaintiff Dotson's Hitch was over, he then traveled back to his hometown in Ohio. This was his regular work schedule during his entire tenure.

93. Plaintiff Monn traveled from Pennsylvania to various states including Ohio, West Virginia, and Pennsylvania for a weeks-long Hitch. After Plaintiff Monn's Hitch was over, he then traveled back to his hometown in Pennsylvania. This was his regular work schedule during his entire tenure.

94. Plaintiffs spent substantial time before and after their shifts driving or flying hundreds of miles to and from the job sites. This travel cut across Plaintiffs' normal working hours during both regular working days and non-working days.

95. Based on reasonable belief, this pay practice has been in place for the last three years or at the minimum during the Plaintiffs' tenure.

**Facts regarding Deep Well's January 2025 Travel-Time Policy Change**

96. Before January 2025, Defendant did not pay Plaintiffs or other Field Service Employees for any time spent traveling from their homes to out-of-town job assignments or returning home after completing those assignments.

97. Before January 2025, Defendant had no system, method, or tool for Plaintiffs to record or track the hours they spent driving to and from out-of-town hitches.

98. Before January 2025, Defendant relied only on mileage reimbursement forms and mileage logs, which do not reflect start times, end times, or actual hours worked while driving.

99. Before January 2025, Defendant required Plaintiffs to travel long distances to out-of-town job sites requiring overnight stays but never compensated employees for the time spent traveling to or from those assignments.

100. Even after the January 2025 policy change, Defendant still does not pay Field Service Employees for any time spent traveling by airplane to or from out-of-town assignments.

101. Even after the January 2025 policy change, Defendant does not provide any system

or method for employees to record or be compensated for time spent at the airport before flights.

102. Even after the January 2025 policy change, Defendant does not compensate Field Service Employees for the ground-transportation time required to travel between the airport and company-provided lodging.

103. Despite the hours of travel time incurred for each direction of air travel, Defendant does not compensate Plaintiffs for any portion of those hours.

104. Defendant uniformly applied the refusal to pay for airline travel time to all Field Service Employees, regardless of job title, work location, or assigned hitch.

105. Defendant's failure to pay for air-travel time continued after it began paying for drive-time, creating two different categories of uncompensated travel depending on the method of travel.

**Off-the-Clock Pre-Shift and Cross-Shift Work at Job Sites**

106. Deep Well assigned Plaintiffs to work shifts that were typically from 6:00 AM to 6:00 PM ("day shift"), or 6:00 PM to 6:00 AM ("night shift").

107. Defendant required Plaintiffs to arrive at the job site approximately one (1) hour before the scheduled start of each shift.

108. As a result, Plaintiffs were typically required to arrive at the job site by approximately 5:00 a.m. for day shifts or 5:00 p.m. for night shifts.

109. Upon arrival at the job site, Plaintiffs were required to don personal protective equipment and attend mandatory pre-shift or cross-shift safety meetings.

110. Defendant required Plaintiffs to attend a Pre-Shift or Cross-Shift meeting before each shift, which were typically held at approximately 5:30 a.m. before day shifts and 5:30 p.m. before night shifts.

111. The purpose of these meetings was to allow the outgoing crew to relay information regarding job conditions, equipment status, and events that occurred during the prior shift.

112. Pre-Shift and Cross-Shift meetings were required by Defendant and, in some instances, by Defendant's customers.

113. Defendant did not compensate Plaintiffs for time spent attending required pre-shift or cross-shift meetings.

114. Defendant did not track the actual number of hours Plaintiffs worked each day.

115. Instead, Defendant paid Plaintiffs a fixed number of hours per day when their names appeared on field tickets, regardless of the total number of hours actually worked.

116. Defendant typically paid Plaintiffs for twelve (12) hours at their Field Rate for each day worked in the field, regardless of whether Plaintiffs worked additional hours before, during, or after their scheduled shifts.

117. Defendant did not record time spent traveling between company-provided lodging and the job site, time spent waiting for transportation, or time spent attending pre-shift or cross-shift meetings.

118. Rather than tracking or recording the actual time Plaintiffs spent traveling between company-provided lodging and the job site, Defendant paid Plaintiffs a flat "Drive Time Bonus" when their names appeared on field tickets.

119. This flat payment did not reflect the actual amount of time Plaintiffs spent traveling or waiting for transportation and was not tied to the distance between the lodging and the job site.

120. As a result of these practices, Plaintiffs worked hours that were not recorded or compensated.

**Defendant's Failure to Include Nondiscretionary Bonuses in the Regular Rate**

121. Throughout the relevant period, Defendant paid Plaintiffs and other Field Service Employees multiple forms of bonuses tied to jobsite conditions, staffing levels, work assignments, and safety compliance.

122. These bonuses were paid pursuant to standardized policies and practices and were earned automatically when predefined, objective criteria were met.

123. Because these bonuses were paid based on pre-determined conditions and not at the employer's discretion, they qualify as nondiscretionary compensation under 29 C.F.R. § 778.211.

124. Under the Fair Labor Standards Act ("FLSA"), an employee's regular rate of pay includes all remuneration for employment except those payments specifically excluded by statute. Bonuses that are promised, expected, or paid pursuant to objective criteria are nondiscretionary and must be included in the regular rate when calculating overtime compensation.

Daily Drive Bonus

125. Defendant paid Plaintiffs and other Field Service Employees a fixed "Daily Drive Bonus" in connection with out-of-town work assignments at remote job sites.

126. The Daily Drive Bonus consisted of a fixed payment equal to two (2) hours of pay at the Plaintiff's "Shop Rate," regardless of the actual travel time between the lodging and the job site.

127. The Daily Drive Bonus was associated with out-of-town assignments where Defendant required employees to stay in company-provided lodging near the job site.

128. The Daily Drive Bonus was not calculated based on the actual distance between the lodging and the job site, nor on the actual amount of time spent traveling between the two.

129. Defendant paid the Daily Drive Bonus regardless of whether the employee personally drove between the lodging and the job site.

130. The only determining factor for Defendant to pay a Daily Drive Bonus was if the individual's name appeared on the daily job ticket for an out-of-town assignment.

131. Payment of the Daily Drive Bonus was automatic once these objective conditions were met and did not vary based on commute length, travel conditions, or time spent traveling.

132. Payment of the Daily Drive Bonus did not depend on managerial discretion, subjective evaluation, or individualized approval.

133. Defendant paid the Daily Drive Bonus through its regular payroll system as part of Plaintiffs' wages.

Short-Hand Bonus

134. Defendant paid Plaintiffs and other Field Service Employees a "Short-Hand Bonus" when a crew operated with fewer than the standard number of crew members.

135. The Short-Hand Bonus was paid to the remaining crew members when one or more crew members were absent from the assigned crew.

136. Eligibility for the Short-Hand Bonus was triggered by the objective condition of a short-staffed crew and did not depend on employee performance.

137. The amount of the Short-Hand Bonus was fixed in advance and did not vary based on the number of hours worked or the degree of understaffing.

138. Payment of the Short-Hand Bonus was automatic once the crew was short-staffed and did not depend on managerial discretion, subjective evaluation, or individualized approval.

139. Defendant paid the Short-Hand Bonus through its regular payroll system as part of Plaintiffs' wages.

High-Pressure Bonus

140. Defendant paid Plaintiffs and other Field Service Employees a "High-Pressure

Bonus" when they worked at job sites operating at elevated pressure levels.

141. Eligibility for the High-Pressure Bonus was triggered when job-site pressure exceeded a predefined pressure threshold.

142. The amount of the High-Pressure Bonus was fixed in advance and varied by job role, with Operators receiving an additional $75.00 per shift and the remaining crew members receiving an additional $50.00 per shift.

143. Once the qualifying pressure threshold was met, payment of the High-Pressure Bonus was automatic and did not depend on employee performance, managerial discretion, or individualized approval.

144. Defendant paid the High-Pressure Bonus through its regular payroll system as part of Plaintiffs' wages.

Dirty Water Bonus

145. Defendant paid Plaintiffs and other Field Service Employees a "Dirty Water Bonus" when they worked at job sites involving dirty water conditions.

146. Eligibility for the Dirty Water Bonus was triggered by the presence of dirty water conditions at the job site, as determined by Defendant’s job site’s classifications and field practices.

147. The Dirty Water Bonus was paid automatically when dirty water conditions were present and did not depend on employee performance, managerial discretion, or individualized approval.

148. The amount of the Dirty Water Bonus was fixed in advance and did not vary based on the number of hours worked.

149. Defendant paid the Dirty Water Bonus through its regular payroll system as part of

Plaintiffs' wages.

<u>H2S Bonus</u>

150. Defendant paid Plaintiffs and other Field Service Employees an "H2S Bonus" in connection with work performed at job sites involving hydrogen sulfide ("H2S") conditions.

151. Eligibility for the H2S Bonus was triggered by the presence of H2S-related conditions at the job site, as designated by Defendant's jobsite classifications, safety designations, or field practices.

152. The amount of the H2S Bonus was fixed in advance at an additional $50 per day.

153. Payment of the H2S Bonus was automatic when H2S conditions were present and did not depend on employee performance, managerial discretion, or individualized approval.

154. Defendant paid the H2S Bonus through its regular payroll system as part of Plaintiffs' wages.

<u>Performance Excellence Program ("PEP") Bonus</u>

155. Defendant maintained a Performance Excellence Program ("PEP") under which Plaintiffs and other Field Service Employees were eligible to receive a quarterly bonus based on documented daily attendance and the absence of disqualifying events.

156. The only criteria for earning the PEP Bonus for a given day were: (1) reporting for work as scheduled, and (2) remaining eligible for the bonus by having no disqualifying entry for that employee for that day in Defendant's Performance Tracker spreadsheet ("Tracker").

157. Disqualifying events were documented with safety incidents or recorded violations of Defendant's Standard Operating Procedures ("SOPs"), and did not include subjective assessments of work quality or general performance.

158. The Tracker was used to monitor and record any disqualifying events affecting an

employee's continued eligibility for the PEP Bonus and identified the date and reason for any such disqualification.

159. If an employee's name did not appear on the Tracker for a particular day, the employee remained eligible for the PEP Bonus for that day by default.

160. Employees did not lose eligibility for the PEP Bonus solely because they were not scheduled to work or did not perform work on a particular day, provided no disqualifying event was recorded.

161. Defendant calculated the PEP Bonus by applying a fixed percentage, typically five percent (5%), to the employee's gross daily pay for qualifying days and aggregating the amounts for payment on a quarterly basis.

162. The PEP Bonus was calculated using payroll data and related job records and was paid through Defendant's regular payroll system.

163. Lisa Herrington, Defendant's Director of Finance, calculated the PEP Bonus using daily payroll and job records and reviewed the Tracker to determine whether any documented safety incident or SOP violation had been recorded before applying the bonus.

164. The PEP Bonus calculation and payout were mechanical and based entirely on documented criteria and did not depend on managerial discretion, subjective evaluation, or individualized approval.

165. Each of the foregoing bonuses, including the Daily Drive Bonus, Short-Hand Bonus, High-Pressure Bonus, Dirty Water Bonus, H2S Bonus, and Performance Excellence Program ("PEP") Bonus, was earned pursuant to objective, pre-determined criteria and paid as part of Plaintiffs' wages pursuant to companywide policies and practices.

166. Despite paying these nondiscretionary bonuses, Defendant excluded them from

Plaintiffs' regular rate of pay when calculating overtime compensation.

167. As a result, Defendant paid Plaintiffs overtime compensation at rates lower than those required by the Fair Labor Standards Act in workweeks in which one or more of these bonuses was earned.

## V. SCOPE OF ACTION

168. This action is limited to wage and hour violations that were not resolved, released, or remedied in the prior action styled *Justin Lawrence, individually and on behalf of similarly situated individuals v. Sun Energy Services LLC d/b/a Deep Well Services*, Case No. 2:23-cv-02155, pending in the Western District of Pennsylvania.

169. This lawsuit challenges distinct pay practices, different categories of compensable work, and different time periods than those at issue in the prior action, and does not seek to relitigate any claim released or adjudicated in that case.

170. Plaintiffs bring this action to recover unpaid wages and overtime compensation arising from Defendant's policies and practices governing travel time, off-the-clock work, and overtime calculations that were not addressed or cured in the prior lawsuit.

171. This action seeks recovery for unpaid drive time to and from out-of-town assignments occurring before January 2025.

172. Before January 2025, Defendant did not permit employees to record time spent driving to or from out-of-town job assignments and uniformly excluded that drive time from hours worked, even when such travel occurred during normal working hours and caused employees to exceed forty hours in a workweek.

173. Defendant's January 2025 policy change allowing limited recording of drive time does not remedy or extinguish liability for unpaid drive time that occurred before that policy

change.

174. This action also seeks recovery for unpaid air travel time for the named Plaintiffs during the applicable statutes of limitation under federal and state law.

175. At all relevant times, Defendant required Plaintiffs to travel by airplane to and from out-of-town assignments but failed to compensate them for time spent flying, time spent at airports, and required ground transportation associated with air travel.

176. Defendant's January 2025 policy change did not apply to air travel and did not remedy these violations, which continued after that date.

177. This action further challenges Defendant's failure to include multiple nondiscretionary bonuses in the regular rate of pay for overtime purposes, including the Daily Drive Bonus, Dirty Water Bonus, Short-Hand Bonus, H2S Bonus, PEP Bonus, and High-Pressure Bonus.

178. These regular-rate violations were not fully litigated or resolved in the prior action and continued after Defendant was placed on notice of its wage obligations.

179. This action also seeks recovery for unpaid overtime arising from required pre-shift and cross-shift work, including donning and doffing and mandatory safety meetings, that were not fully addressed in the prior lawsuit.

180. Finally, this action asserts state law overtime and wage claims under statutes that were not included in the prior New Mexico-only class claims. These state law claims arise under distinct statutory frameworks, involve different class definitions, and provide independent remedies.

## VI. FLSA COLLECTIVE ALLEGATIONS

181. Plaintiffs repeat and re-allege all the preceding paragraphs of this Complaint as if

fully set forth in this section.

182. There is another pending case in this division. (*Justin Lawrence, individually and on behalf of similarly situated individuals v. Sun Energy Services LLC d/b/a Deep Well Services*, Case No. 2:23-cv-02155, in the Western District of Pennsylvania).

183. This action seeks relief on behalf of the 12 named plaintiffs who did not opt into the prior collective action and asserts both similar wage-and-hour claims and additional categories of violations that were not addressed or resolved in the earlier lawsuit.

184. Unlike the *Lawrence* action, this action challenges distinct violations, including:

a. <u>Different Nondiscretionary Bonuses</u>—This action challenges Defendant's exclusion of several distinct nondiscretionary bonuses that were not included in the first lawsuit: Daily Drive Bonus, Short-Hand Bonus, High-Pressure Bonus, Dirty Water Bonus, H2S Bonus, and Performance Excellence Program bonus. Defendant paid these bonuses pursuant to objective and predetermined criteria and excluded them from the regular rate used to calculate overtime compensation. Defendant continued to exclude nondiscretionary bonuses from overtime calculations after the *Lawrence* action was filed, despite being placed on notice that those practices were being challenged as unlawful. Each workweek in which Defendant excluded nondiscretionary bonuses from overtime calculations constituted a separate and continuing violation of the Fair Labor Standards Act.

b. <u>Different Off-the-Clock Work</u>—This action includes unpaid off-the-clock work arising from required donning and doffing of uniforms and protective

gear, as well as mandatory pre-shift safety meetings, where the uniform and gear changes were required to be completed before the pre-shift meetings, and which were not asserted or resolved in the *Lawrence* action.

c. Different Time Period—The FLSA Collective includes employees who performed unpaid work related to required airline travel after October 15, 2024. Although Defendant implemented a policy change in or around January 2025 addressing the tracking of certain drive time, that change did not correct Defendant's failure to track or pay employees for time spent traveling by plane. Accordingly, Defendant's unpaid airline-travel violations continued after the January 2025 policy change and remain within the scope of this Collective.

185. On October 15, 2024, the Court granted Lawrence's Motion for Conditional Certification of an FLSA Collective. [Doc. 40] The Order covered the time period of employees who worked for Defendant three-years prior to the date of Notice.

186. Because these employees are similarly situated to Plaintiffs and are owed overtime for the same reasons, the proposed collectives are properly defined as follows:

**Definition of FLSA Collective for Failure to Pay Overtime for Airline Travel Time**

> "All hourly employees employed by Sun Energy Services LLC d/b/a Deep Well Services within three years of the filing of this lawsuit, who worked in the positions of Greenhat, Roughneck, Leadhand, Operator, and/or Derrickman, and who, at any time on or after October 15, 2024, were required to travel by airline for out-of-town work assignments but were not paid for all hours spent engaged in required airline travel, including not only time spent in the air, but also time spent checking in at the airport, undergoing required security screening, waiting to board, and retrieving baggage upon arrival, including travel that cut through normal work hours."

**Definition of FLSA Collective for Unpaid Time**

> "All hourly employees employed by Sun Energy Services LLC d/b/a Deep Well Services within three years of the filing of this lawsuit, who worked in the positions of Greenhat, Roughneck, Leadhand, Operator, and/or Derrickman, and who were not paid for required donning and doffing of uniforms and safety equipment at any time during that three-year period, and who, on or after October 15, 2024, were not paid for time spent attending mandatory pre-shift safety meetings and cross-shift meetings."

**Definition of Regular Rate FLSA Collective for Failure to include bonuses in the regular rate for overtime purposes**

> "All hourly employees, employed by Sun Energy Services LLC d/b/a Deep Well Services within three years of the filing of this lawsuit who were in the following positions: Greenhat, Roughneck, Leadhand, Operator, and/or Derrickman and did not have their Daily Drive Bonus, Short-Hand Bonus, High-Pressure Bonus, Dirty Water Bonus, H2S Bonus, or Performance Excellence Program ("PEP") Bonuses included in the calculation of their regular rate for overtime purposes." ("Regular Rate FLSA Collective")

187. The illegal pay practices Defendant imposed on Plaintiffs were likewise imposed on the FLSA Collective.

188. The Defendant imposed a uniform practice or policy on Plaintiffs and the FLSA Collective regardless of any individualized factors. They all worked over 40 hours a week. Any unpaid business travel to and from their hitch would result in unpaid overtime.

189. Plaintiffs' experiences are therefore typical of the experiences of the FLSA Collective.

190. The specific job titles or precise job locations of the various FLSA Collective do not prevent class or collective treatment.

191. Plaintiffs have no interest contrary to, or in conflict with, the other FLSA Collective. Like each member of the proposed classes, Plaintiffs have an interest in obtaining the unpaid overtime wages owed under state and/or federal law.

192. Plaintiffs are similarly situated to the FLSA Collective and will prosecute this action vigorously on their behalf.

193. During the relevant time period, Plaintiffs and the FLSA Collective routinely spent time traveling away from home to Defendant's job sites. Plaintiffs and the FLSA Collective were not compensated for their travel time at an overtime rate, even when such travel resulted in a workweek in excess of 40 hours.

194. Defendant willfully engaged in a pattern of violating the FLSA, 29 U.S.C. § 201 *et seq*., as described in this Complaint in ways including, but not limited to, failing to pay Plaintiffs and the FLSA Collective proper compensation, including overtime compensation, for their travel time.

195. Defendant's conduct constitutes a willful violation of the FLSA within the meaning of 29 U.S.C. § 255(a).

196. Plaintiffs, individually and on behalf of all others similarly situated, seek relief on a collective basis challenging Defendant's above-described FLSA violations. The number and identity of other plaintiffs yet to opt-in and consent to be party plaintiffs may be determined from Defendant's records, and potential opt-in plaintiffs may easily and quickly be notified of the pendency of this action.

## VII. RULE 23 CLASS ALLEGATIONS

197. Plaintiffs repeat and re-allege all the preceding paragraphs of this Complaint as if fully set forth in this section.

198. <u>Class Definitions</u>: Plaintiffs bring this action individually and on behalf of other similarly situated individuals. Pursuant to Federal Rules of Civil Procedure 23(b)(3), 23(b)(2), and/or 23(c)(4), Plaintiffs seek certification of the foregoing classes and subclasses, defined as follows:

> **State Unpaid Overtime Class**: "All persons who worked for Defendant Sun Energy Services LLC d/b/a Deep Well Services in the last three-years as non-

exempt Field Service Employees in Pennsylvania, Ohio, Colorado, and West Virginia, who worked more than forty hours in a workweek and were not paid overtime compensation for required travel to and from out of town assignments with at least one overnight stay or required pre-shift or post-shift work including pre-shift uniform change, attending pre-shift safety meeting."

199. Excluded from the Class are the Court and its officers, employees, and relatives; Deep Well and its subsidiaries, officers, and directors; and governmental entities.

200. Plaintiffs do not seek Rule 23 certification for claims arising under New Mexico law or for claims based on Defendant's failure to include nondiscretionary bonuses in the regular rate of pay, which are asserted solely as FLSA collective claims.

**A. <u>West Virginia Class</u> - Violation of the West Virginia Minimum Wage and Maximum Hours Standards for Employees Act W. Va. Code § 21-5C-1, *et seq.***

(*On Behalf of Plaintiffs Bitz, Rippetoe, Snyder, Daugherty, Jonah Faulk, Nestor, Daniel Faulk, Williams, Monn, and Others Similarly Situated*)

201. Defendant violated West Virginia law by failing to pay the West Virginia Plaintiffs Bitz, Rippetoe, Snyder, Daugherty, Jonah, Nestor, Daniel, Williams, and Monn and others similarly situated one and one half times their regular hourly rate for hours worked in excess of 40 hours in any one work week.

**B. <u>Colorado Class</u>**

(*On Behalf of Plaintiff Daugherty and Others Similarly Situated*)

202. Defendant violated Colorado law by failing to pay the Colorado Named Plaintiffs and others similarly situated one and one half times their regular hourly rate for hours worked in excess of 40 hours in any one work week.

**C. <u>Ohio Class</u>**

*(On Behalf of Plaintiffs Bitz, Snyder, Jonah Faulk, Nestor, Daniel Faulk, Williams, Monn, and Others Similarly Situated)*

203. Defendant violated Ohio law by failing to pay the Ohio Named Plaintiffs and others similarly situated one and one half times their regular hourly rate for hours worked in excess of 40 hours in any one work week.

**D. <u>Pennsylvania Class</u>**

*(On Behalf of Plaintiffs Bitz, Rippetoe, Snyder, Daugherty, Jonah Faulk, Nestor, Daniel Faulk, Williams, Dotson, Monn and Others Similarly Situated)*

204. Defendant violated Pennsylvania law by failing to pay the Pennsylvania Named Plaintiffs and others similarly situated one and one half times their regular hourly rate for hours worked in excess of 40 hours in any one work week."

**Numerosity**

205. The Class is so numerous that joinder of all members is impracticable. Defendant employed hundreds of non-exempt Field Service Employees in the covered states during the class period. All members of the Class are ascertainable by reference to objective criteria, as Deep Well has access to addresses and other contact information for Class members that can be used for notice purposes.

**Commonality**

206. Questions of law and fact common to the Class include, but are not limited to:

a. Whether Defendant maintained uniform policies or practices requiring uncompensated out-of-town travel time.

b. Whether Defendant maintained uniform policies or practices requiring uncompensated pre-shift or post-shift work.

c. Whether such time constitutes compensable work under applicable state wage laws.

d. Whether Defendant failed to pay overtime compensation as required by

state law.

**Typicality**

207. Typicality is satisfied because Plaintiffs' claims arise from the same policies and practices that apply to the Class. Plaintiffs' claims are typical of the claims of the Class because all claims arise from the same course of conduct by Deep Well and are based on the same legal theories.

**Adequacy**

208. Adequacy is satisfied because Plaintiffs will fairly and adequately protect the Class and have retained counsel with substantial experience in prosecuting complex and class action litigation. Plaintiffs and their counsel are committed to vigorously prosecuting this action on behalf of Class members and have the financial resources to do so. The Class members' interests will be fairly and adequately protected by Plaintiffs and their counsel.

**Predominance and Superiority**

209. Common questions of law and fact predominate over any questions affecting individual Class members, including whether Defendant maintained uniform policies and practices that denied required overtime pay in violation of applicable state wage laws.

210. A class action is superior to other available methods for the fair and efficient adjudication of these claims. Class treatment will permit a large number of similarly situated persons to prosecute their respective class claims in a single forum, simultaneously, efficiently, and without unnecessary duplication of evidence, effort, and expense that numerous individual actions would produce.

**Issue Certification**

211. To the extent not all issues or claims, including the amount of damages, can be

resolved on a class-wide basis, Plaintiffs invoke Federal Rule of Civil Procedure 23(c)(4), reserving the right to seek certification of a class action with respect to particular issues, and Federal Rule of Civil Procedure 23(c)(5), reserving the right to divide the class into subclasses.

212. In the alternative, Plaintiffs seek certification of issue classes pursuant to Rule 23(c)(4) with respect to liability issues arising from Defendant's uniform policies and practices.

## VIII. CAUSES OF ACTION

## COUNT I

## FLSA OVERTIME — INDIVIDUAL CLAIM

(29 U.S.C. § 207)

*On Behalf of Named Plaintiffs Individually*

213. Plaintiffs reallege the above-stated paragraphs as if stated in this Count.

214. Plaintiffs were non-exempt employees under the FLSA.

215. Plaintiffs often worked over forty hours in individual workweeks.

216. Defendant did not pay one and one-half times the regular rate for all hours worked over forty in a workweek.

217. Defendant's failure to pay overtime violated 29 U.S.C. § 207.

218. The FLSA, 29 U.S.C. § 207(a)(1), provides that no employer shall employ an employee for a workweek longer than forty hours unless such employee receives compensation for hours worked in excess of forty at a rate not less than one and one-half times the employee's regular rate of pay.

219. Plaintiffs are and were at all relevant times "employees" within the meaning of the FLSA, 29 U.S.C. §§ 203(e) and 207(a).

220. During their employment with Defendant, Plaintiffs were non-exempt, hourly

employees whose duties do not qualify for any exemption under the FLSA.

221. For overtime purposes, Defendant did not count the time Plaintiffs spent traveling to and from out-of-town assignments involving overnight stays or attending required pre-shift meetings as hours worked.

222. Defendant did not include the following bonuses in the calculation of the regular rate for overtime purposes: Daily Drive Bonus, Short-Hand Bonus, High-Pressure Bonus, Dirty Water Bonus, H2S Bonus, and Performance Excellence Program ("PEP") Bonus.

223. Despite working in excess of forty hours per week, Plaintiffs did not receive overtime compensation for all hours worked.

224. Because Defendant's violation of the FLSA was willful, Plaintiffs are entitled to recover unpaid overtime wages for a period of up to three years preceding the filing of this Complaint.

225. Plaintiffs are entitled to unpaid overtime, an equal amount as liquidated damages, pre- and post-judgment interest, and reasonable attorneys' fees and costs under 29 U.S.C. § 216(b).

WHEREFORE, Plaintiffs respectfully request that this Court enter judgment in their favor and against Defendant as follows: (1) the payment at one and one-half times the regular rates of pay for all hours worked over forty in any workweek within three years preceding the date of filing this action; (2) liquidated damages; (3) reasonable attorneys' fees, costs, and expenses; (4) a reasonable service award to Plaintiffs to compensate them for the time spent attempting to recover wages for FLSA collective members; (5) pre-judgment and post-judgment interest as permitted by law; and (6) such other and further relief as the Court deems just and proper.

## COUNT II

## FLSA OVERTIME — FAILURE TO PAY FOR REQUIRED TRAVEL TIME

(29 U.S.C. § 207)

*On Behalf of Plaintiffs and the FLSA Collective*

226. Plaintiffs re-allege and incorporate by reference all preceding paragraphs of this Complaint as if fully set forth herein.

227. The Fair Labor Standards Act ("FLSA") requires employers to pay non-exempt employees overtime compensation at a rate of one and one-half times the employee's regular rate of pay for all hours worked in excess of forty (40) in a workweek. 29 U.S.C. § 207(a)(1).

228. Under the Fair Labor Standards Act and its implementing regulations, when an employee is required to travel away from the employee's home community to a location that requires an overnight stay, travel time that occurs during the employee's normal working hours on both working and non-working days constitutes compensable work time. 29 C.F.R. § 785.39.

229. Defendant required Plaintiffs to travel long distances to remote job sites requiring overnight stays as an integral and indispensable part of their employment.

230. Plaintiffs' required out-of-town travel routinely occurred during their normal working hours and frequently required a full day of travel in each direction.

231. Pursuant to a uniform and companywide policy and practice, Defendant failed to record and compensate Plaintiffs for required out-of-town travel time occurring during normal working hours, including drive time to and from out-of-town job assignments occurring prior to January 2025 when Defendant did not permit employees to record or be paid for such time.

232. Pursuant to the same uniform and companywide policy and practice, Defendant also failed to record and compensate Plaintiffs for required air travel time, including time spent flying, time spent at airports, and required ground transportation associated with flights, throughout the applicable limitations period.

233. Defendant's January 2025 policy change allowing limited compensation for certain drive time did not remedy or extinguish Defendant's liability for unpaid drive time occurring before that policy change.

234. Defendant's January 2025 policy change did not apply to air travel and did not provide any mechanism for employees to record or be compensated for required air travel time.

235. As a result of Defendant's policies and practices, Plaintiffs regularly worked more than forty hours in a workweek without receiving overtime compensation required by the Fair Labor Standards Act.

236. Defendant's policy of failing to compensate required out-of-town travel time has been in place throughout the applicable three-year limitations period[1].

237. Defendant knew that it was required to pay Plaintiffs overtime compensation for required out-of-town travel time occurring during normal working hours and willfully failed to do so.

238. Defendant knew or showed reckless disregard for the fact that it was required to compensate Plaintiffs for required out-of-town travel time occurring during normal working hours.

239. Defendant's failure to compensate Plaintiffs for such travel time was willful and in violation of the Fair Labor Standards Act.

240. As a direct and proximate result of Defendant's unlawful conduct, Plaintiffs have suffered damages, including unpaid overtime wages.

241. Plaintiffs seek recovery of unpaid overtime wages, liquidated damages, interest, reasonable attorneys' fees, and costs pursuant to 29 U.S.C. §§ 216(b) and 255, and such other relief as the Court deems just and proper.

---

[1] Except as described in Paragraphs 99–108 regarding Defendant's January 2025 travel-time policy update, this policy has been in place throughout the applicable three-year limitations period.

## COUNT III

## FLSA OVERTIME — FAILURE TO PAY FOR UNPAID PRE-SHIFT AND CROSS-SHIFT WORK

(29 U.S.C. § 207)

*On Behalf of Plaintiffs and the FLSA Collective*

242. Plaintiffs reallege and incorporate by reference all preceding paragraphs of this Complaint as if fully set forth herein.

243. The Fair Labor Standards Act requires employers to pay non-exempt employees overtime compensation at a rate of one and one-half times the employee's regular rate of pay for all hours worked in excess of forty hours in a workweek. 29 U.S.C. § 207.

244. Defendant assigned Plaintiffs to scheduled shifts at remote job sites with defined start and end times.

245. Defendant required Plaintiffs to report to the job site before the scheduled start of their shifts and to remain on site after the scheduled end of their shifts.

246. Defendant required Plaintiffs to change into mandatory work uniforms and don required personal protective equipment ("PPE") before the scheduled start of their shifts and to doff required PPE (including clothing, work shoes, hard hats, gloves, eye protection, and other safety gear mandated by Defendant and its customers) after the scheduled end of their shifts.

247. Defendant required Plaintiffs to attend mandatory cross-shift meetings before the scheduled start of their shifts to receive operational, safety, and job status briefings from the outgoing crew, and to attend mandatory cross-shift meetings after the scheduled end of their shifts to brief the incoming crew regarding job conditions, equipment status, and work performed.

248. Defendant required Plaintiffs to attend mandatory pre-shift safety meetings before the scheduled start of their shifts.

249. For example, when working a day shift, Defendant required Plaintiffs to be on the location at 5:00 AM and had a daily pre-shift safety meeting at 5:30 AM before their shift began at 6:00 AM.

250. Defendant required Plaintiffs to perform each of these activities on site and as a condition of beginning and completing their scheduled shifts.

251. Each of these activities was integral and indispensable to Plaintiffs' principal job duties and was performed for Defendant's benefit.

252. Defendant did not record or compensate Plaintiffs for time spent performing the required donning and doffing of uniforms and safety gear, cross-shift meetings, or pre-shift safety meetings.

253. Defendant compensated Plaintiffs only for their scheduled shift hours and excluded time spent performing required pre-shift and post-shift activities from hours worked.

254. Plaintiffs regularly worked more than forty hours in a workweek, and Defendant's failure to compensate this required work resulted in unpaid overtime compensation.

255. Defendant knew or showed reckless disregard for the fact that it was required to compensate Plaintiffs for all hours worked, including the required pre-shift and post-shift activities described above.

256. Defendant's failure to compensate Plaintiffs for this required work was willful and in violation of the Fair Labor Standards Act.

257. As a direct and proximate result of Defendant's unlawful conduct, Plaintiffs have suffered damages, including unpaid overtime wages.

258. By reason of the unlawful acts alleged herein, Defendant is liable to Plaintiffs for, and Plaintiffs seek, unpaid overtime wages, liquidated damages, prejudgment interest, civil

penalties and costs, including reasonable attorney's fees as provided by the FLSA.

259. Alternatively, should the Court find that Defendant acted in good faith in failing to pay Plaintiffs as provided by the FLSA, Plaintiffs are entitled to an award of prejudgment interest at the applicable legal rate.

**COUNT IV**

**FLSA OVERTIME — FAILURE TO PAY OVERTIME AT THE PROPER REGULAR RATE**

(29 U.S.C. § 207)

*On Behalf of Plaintiffs and the Regular Rate FLSA Collective*

260. Plaintiffs repeat and re-allege all the preceding paragraphs of this Complaint as if fully set forth in this section.

261. The Fair Labor Standards Act requires employers to pay non-exempt employees overtime compensation at a rate of one and one-half times the employee's regular rate of pay for all hours worked in excess of forty hours in a workweek. 29 U.S.C. § 207(a)(1).

262. The regular rate of pay includes all remuneration for employment except those payments specifically excluded by statute. 29 U.S.C. § 207(e); 29 C.F.R. § 778.109.

263. Throughout the relevant period, Defendant paid Plaintiffs and other non-exempt Field Service Employees multiple forms of additional compensation in the form of bonuses tied to job conditions, staffing levels, work assignments, and safety-related criteria.

264. These bonuses included, but were not limited to, the Daily Drive Bonus, Dirty Water Bonus, Short-Hand Bonus, H2S Bonus, High-Pressure Bonus, and Performance Excellence Program bonus.

265. Each of these bonuses was earned pursuant to objective and predetermined criteria and was paid automatically when the applicable conditions were met.

266. Payment of these bonuses did not depend on managerial discretion, subjective evaluation, or individualized approval.

267. Defendant paid these bonuses through its regular payroll system as part of Plaintiffs' wages.

268. Despite paying these nondiscretionary bonuses, Defendant excluded them from Plaintiffs' regular rate of pay when calculating overtime compensation.

269. As a result of Defendant's exclusion of nondiscretionary bonuses from the regular rate, Plaintiffs were paid overtime compensation at rates lower than those required by the Fair Labor Standards Act.

270. Defendant's failure to include nondiscretionary bonuses in the regular rate occurred pursuant to a uniform and companywide policy and practice.

271. After the filing of a prior Fair Labor Standards Act lawsuit against Defendant in this District challenging Defendant's overtime pay practices, Defendant was placed on actual notice that its treatment of nondiscretionary bonuses for overtime purposes was alleged to be unlawful. See *Justin Lawrence, individually and on behalf of similarly situated individuals v. Sun Energy Services LLC d/b/a Deep Well Services*, Case No. 2:23-cv-02155, in the Western District of Pennsylvania.

272. Despite this notice and the opportunity to correct its pay practices, Defendant continued to exclude nondiscretionary bonuses from the calculation of the regular rate used to compute overtime compensation.

273. Defendant's continued exclusion of nondiscretionary bonuses from overtime calculations after being placed on notice was willful and demonstrated a reckless disregard for its obligations under the Fair Labor Standards Act.

274. Defendant knew or showed reckless disregard for the fact that nondiscretionary bonuses must be included in the regular rate for purposes of calculating overtime compensation.

275. Defendant's failure to include nondiscretionary bonuses in the regular rate was willful and in violation of the Fair Labor Standards Act.

276. As a direct and proximate result of Defendant's unlawful conduct, Plaintiffs have suffered damages, including unpaid overtime wages.

277. By reason of the unlawful acts alleged herein, Defendant is liable to Plaintiffs for, and Plaintiffs seek, unpaid overtime wages, liquidated damages, prejudgment interest, civil penalties and costs, including reasonable attorney's fees as provided by the FLSA.

278. Alternatively, should the Court find that Defendant acted in good faith in failing to pay Plaintiffs as provided by the FLSA, Plaintiffs are entitled to an award of prejudgment interest at the applicable legal rate.

**COUNT V**

**WEST VIRGINIA OVERTIME — RULE 23 CLASS**

*West Virginia Minimum Wage and Maximum Hours Standards Act, W. Va. Code § 21-5C-1, et seq.*

*On Behalf of West Virginia Named Plaintiffs and Others Similarly Situated*

279. Plaintiffs reallege the above-stated paragraphs as if stated in this Count.

280. Defendant violated West Virginia law by failing to pay the West Virginia Named Plaintiffs and others similarly situated one and one-half times their regular hourly rate for hours worked in excess of 40 hours in any one workweek.

281. Plaintiffs and those similarly situated are entitled to unpaid overtime, statutory damages, pre- and post-judgment interest, and reasonable attorneys' fees and costs.

**COUNT VI**

**COLORADO OVERTIME — RULE 23 CLASS**

*Colorado Wage Claim Act, C.R.S. § 8-4-101, et seq.; Colorado Minimum Wage Act, C.R.S. § 8-6-101, et seq.*

*On Behalf of Colorado Named Plaintiffs and Others Similarly Situated*

282. Plaintiffs reallege the above-stated paragraphs as if stated in this Count.

283. Defendant violated Colorado law by failing to pay the Colorado Named Plaintiffs and others similarly situated one and one-half times their regular hourly rate for hours worked in excess of 40 hours in any one workweek.

284. Plaintiffs and those similarly situated are entitled to unpaid overtime, statutory damages, interest, and reasonable attorneys' fees and costs.

**COUNT VII**

**OHIO OVERTIME — RULE 23 CLASS**

*Ohio Minimum Fair Wage Standards Act, O.R.C. § 4111.01, et seq.*

*On Behalf of Ohio Named Plaintiffs and Others Similarly Situated*

285. Plaintiffs reallege the above-stated paragraphs as if stated in this Count.

286. Defendant violated Ohio law by failing to pay the Ohio Named Plaintiffs and others similarly situated one and one-half times their regular hourly rate for hours worked in excess of 40 hours in any one workweek.

287. Plaintiffs and those similarly situated are entitled to unpaid overtime, liquidated damages under O.R.C. § 4113.15, prejudgment and post-judgment interest, and reasonable attorneys' fees and costs.

**COUNT VIII**

**PENNSYLVANIA OVERTIME — RULE 23 CLASS**

*Pennsylvania Minimum Wage Act, 43 P.S. § 333.100, et seq.*

*On Behalf of Pennsylvania Named Plaintiffs and Others Similarly Situated*

288. Plaintiffs reallege the above-stated paragraphs as if stated in this Count.

289. Defendant violated Pennsylvania law by failing to pay the Pennsylvania Named Plaintiffs and others similarly situated one and one-half times their regular hourly rate for hours worked in excess of 40 hours in any one workweek.

290. Plaintiffs and those similarly situated are entitled to unpaid overtime, all available penalty wages, and reasonable attorneys' fees and costs pursuant to the Pennsylvania Minimum Wage Act.

## IX. EQUITABLE TOLLING OF FLSA CLAIM

291. Plaintiffs repeat and re-allege all the preceding paragraphs of this Complaint as if fully set forth in this section.

292. The applicable statute of limitations for Plaintiffs' FLSA cause of action should be tolled because strict application of the statute of limitations would be inequitable.

293. Defendant, as an employer with a duty to comply with the FLSA and the means to do so, was and has been at all relevant times in a far superior position than Plaintiffs or members of the proposed class to understand the FLSA and apply it appropriately, and Defendant should not be permitted to benefit from this imbalance of power by the passage of time.

294. FLSA regulations require that all employers display posters advising employees of their overtime pay rights. 29 C.F.R. § 516.4.

295. An employer's failure to post required FLSA notices regarding overtime provisions can toll the statute of limitations.

296. Defendant failed to post all appropriate notices regarding the FLSA.

297. The Third Circuit has observed that equitable tolling, if available, can rescue a

claim otherwise barred as untimely by a statute of limitations when a plaintiff has been prevented from filing in a timely manner due to sufficiently inequitable circumstances. Such circumstances often occur: "(1) where the defendant has actively misled the plaintiff respecting the plaintiff's cause of action; (2) where the plaintiff in some extraordinary way has been prevented from asserting his or her rights; or (3) where the plaintiff has timely asserted his or her rights mistakenly in the wrong forum." *Santos ex rel. Beato v. United States*, 559 F.3d 189, 197 (3d Cir. 2009).

## X. RELIEF REQUESTED

### A. FLSA Relief

Plaintiffs, individually and on behalf of all others similarly situated, respectfully request that the Court enter judgment in their favor and against Defendant as follows:

1. Certification of this action as a collective action under the FLSA and prompt issuance of notice pursuant to 29 U.S.C. § 216(b) to all members of the FLSA Collective;
2. An Order issuing notice to all similarly situated employees of Defendant informing them of their right to file consents to join the FLSA portion of this action;
3. An award of damages for unpaid overtime wages under 29 U.S.C. § 216(b), including compensatory, consequential, general, nominal, and statutory damages to the extent permitted by law;
4. A reasonable service award to Plaintiffs to compensate them for the time spent attempting to recover wages for FLSA collective members;
5. Liquidated damages under 29 U.S.C. § 216(b);
6. All unpaid overtime wages due to Plaintiffs, the FLSA Collective, and the State Wage Plaintiffs;
7. Reasonable attorneys' fees and costs incurred in filing and prosecuting this action;

8. Pre- and post-judgment interest at the maximum legal rate; and
9. All such other relief as this Court deems just and proper.

**B. Colorado State Relief**

WHEREFORE, Plaintiffs, on behalf of themselves and the Colorado Class Plaintiffs, pray for judgment against Defendant as follows:

1. Award of unpaid and underpaid wages due under the CWCA;
2. Statutory damages as provided for the CWCA;
3. Interest;
4. Costs of this action together with reasonable attorneys' fees; and
5. Such other and further relief as this Court deems necessary and proper.

**C. Ohio State Relief**

WHEREFORE, Plaintiffs, on behalf of themselves and the Ohio Class Plaintiffs, pray for judgment against Defendant as follows:

1. Certification of this case as a class action pursuant to Rule 23 of the Federal Rules of Civil Procedure;
2. Designation of Plaintiffs as representative of the Rule 23 Class and counsel of record as Class Counsel;
3. An award of unpaid overtime wages due under O.R.C. § 4113.15 and the OMFWSA;
4. Liquidated damages under O.R.C. § 4113.15;
5. Prejudgment and post-judgment interest;
6. Costs and expenses of this action, together with reasonable attorneys' fees and expert fees; and
7. Such other legal and equitable relief as the Court deems appropriate.

**D. Pennsylvania State Relief**

WHEREFORE, Plaintiffs, on behalf of themselves and the Pennsylvania Class Plaintiffs, pray for judgment against Defendant as follows:

1. An Order certifying this case as a class action and designating Plaintiffs as the representatives of the Class and their counsel as class counsel;
2. An award for the amount of unpaid overtime compensation, including interest thereon and penalties subject to proof;
3. An Order finding Defendant liable for unpaid overtime wages under the PMWA plus all available penalty wages;
4. Reasonable attorneys' fees and costs pursuant to the Pennsylvania Minimum Wage Act; and
5. Any other damages available under applicable Pennsylvania law, and all such other relief as the Court may deem proper.

**E. West Virginia State Relief**

WHEREFORE, Plaintiffs, on behalf of themselves and the West Virginia Class Plaintiffs, pray for judgment against Defendant as follows:

1. Unpaid wages and interest thereon pursuant to the WVMWA, W. Va. Code § 21-5C *et seq.*;
2. Unpaid wages pursuant to the WVWPCL and liquidated damages pursuant to the WVWPCL for those individuals who are eligible for such damages, W. Va. Code § 21-5-1 *et seq.*;
3. Such equitable relief as may be appropriate including enjoining Defendant from further violations of these laws;

4. Reasonable attorneys' fees and expenses;

5. Costs incurred in the prosecution of this action;

6. Prejudgment and post-judgment interest as permitted by law; and

7. Any additional relief the Court deems just.

## XI. JURY DEMAND

Plaintiffs demand a trial by jury on all claims so triable.

Respectfully submitted,

**TRAN LAW FIRM**

*/s/ Trang Q. Tran*

TRANG Q. TRAN
Pennsylvania Federal I.D: 00795787
800 Town and Country Blvd. Suite 500
Houston, Texas 77024
Ph.: (713) 223 – 8855
trang@tranlf.com
service@tranlf.com

**ATTORNEY FOR PLAINTIFFS, individually and on behalf of similarly situated individuals**